UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>IVAN ROSARIO,<br>    Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 3:18-CR-00007 (VLB)<br><br><br>November 14, 2018 |

## MEMORANDUM OF DECISION ON MOTION FOR NEW TRIAL [DKT. 53]

Before this Court is Defendant Ivan Rosario's motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. Defendant was tried and convicted of one count of causing or inducing any person to destroy evidence, in violation of 18 U.S.C. §§ 1512(b)(2)(B), (j). He now seeks a new trial and requests that the Court reconsider several of its prior rulings. For the following reasons, this motion is DENIED.

I.    Background

On March 16, 2017, a grand jury returned an indictment charging Defendant with (1) conspiracy to distribute and to possess with intent to distribute 1 kilogram or more of a mixture or substance containing 1 kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i); (2) unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(2). *See United States v. Rosario*, No. 17-cr-00055 (VLB) (Rosario I), [Dkt. 13 (Indictment)]. As the case progressed to trial,

1

**Defendant was indicted on new charges. This time, he was charged with two counts in** *United States v. Rosario*, **No. 18-cr-00007 (VLB) (Rosario II): (1) witness tampering with intent to influence or prevent testimony and to cause or induce any person to withhold testimony, in violation of 18 U.S.C. §§ 1512(b)(1), (b)(2)(A), (j); and (2) causing or inducing any person to destroy evidence, in violation of 18 U.S.C. §§ 1512(b)(2)(B) and (j) ("Count Two"). The Court consolidated the cases for trial purposes but bifurcated the count for unlawful possession of a firearm by a convicted felon. The two cases were tried in April 2018 and the jury convicted Defendant of Count Two causing or inducing any person to destroy evidence, in violation of 18 U.S.C. §§ 1512(b)(2)(B), (j). The jury could not agree on the conspiracy charge and it acquitted him of all other charges. Notably, the Government subpoenaed Defendant's girlfriend, Shanika Lexie, to testify. Defendant elected to testify on his own behalf. The Government submitted evidence of certain telephone conversations between Defendant, Ms. Lexie, and Defendant's mother during the time when Defendant was detained and awaiting trial. During those conversations, Defendant directed Ms. Lexie to destroy her cell phone which contained information damaging to Defendant. He enticed her to do so and threatened to hurt her if she did not.**

## II. Procedural History

After the jury convicted Defendant of Count Two, Defendant moved for a mistrial. Rosario II, [Dkt. 26 (Oral Mot. for Mistrial)]. The Court denied Defendant's motion. Rosario II, [Dkt. 37 (Order Denying Oral Mot. for Mistrial)]. A few days later, Defendant filed his motion for judgment of acquittal. Rosario II, [Dkt. 39 (Mot. for J. of Acquittal)]. The Court denied his motion finding that the evidence supported a

reasonable juror's conclusion that he is guilty of Count Two beyond a reasonable doubt. Rosario II, [Dkt. 42 (Ruling and Order on Mot. for J. of Acquittal)]. The Court specifically cited Defendant's three telephone calls with Ms. Lexie during which he told her he would "F" her up if she did not break her cell phone. See Rosario I, [Dkt. 41-1 (Gov. Exs. 200A-T–200F-T) at USAO-002956, -002977, -002981]. Defendant testified that when he told Ms. Lexie to break the "window" she knew that "window" meant "phone." See Rosario I, [Dkt. 291 (Rosario Trial Tr. Day 9) at 234:6–10]. The Court found that a reasonable juror could conclude that Defendant's statements were to prevent the use of the cell phone in his upcoming trial given the short time period between Defendant's telephone calls with Ms. Lexie and the trial in addition to the interrelatedness of the conversations.

Defendant also moved to continue his sentencing arguing that the Court should not sentence him because the underlying offense related to the count of conviction was one for which the jury could not reach a verdict. See Rosario II, [Dkt. 40 (Mot. for Continuance Regarding Sentencing)]. Defendant claimed that the Court should not sentence him until the Government decided whether it would retry him on that count. Defendant further claimed that he was in the unfair predicament of hoping that he would receive a long enough sentence to satisfy the Government so it would not retry him on the underlying offense. He also claimed that participating in a presentence interview with the Probation Office would violate his Fifth Amendment rights. The Court denied Defendant's motion on the following grounds: (1) the count of conviction is not so inextricably linked to the underlying charge such that the Court could not sentence him until the Government decided

whether or not to sentence him for the underlying charge; (2) 18 U.S.C. § 1512(j), the statute of conviction, does not require Defendant to be convicted of the underlying charge; and (3) the Defendant did not state how his Fifth Amendment rights would be prejudiced, but even if he did, Defendant waived his Fifth Amendment right to remain silent by testifying at trial. *See* Rosario II, [Dkt. 44 (Ruling and Order)].

### III. Motion for a New Trial

Rule 33 of the Federal Rules of Criminal Procedure provides that, "the court may vacate any judgment and grant a new trial if the interests of justice so require." Fed. R. Crim. P. 33(a). Rule 33 "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992); *see also United States v. Robinson*, 430 F.3d 537, 543 (2d Cir. 2005). A motion for a new trial should only be granted under exceptional circumstances when "letting a guilty verdict stand would be manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001).

There are two grounds for a motion for a new trial and each has different time limitations. First, a "motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). Second, a "motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). Defendant claims to bring this motion under Rule 33(b)(1) and admits that it is not timely under Rule 33(b)(2). Defendant's motion entirely ignores two important aspects of Rule 33 – the restriction for cases

pending appeal and the test for when a Rule 33(b)(1) motion may be granted. First, Defendant's motion is procedurally improper. Rule 33 states, "[i]f an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case." Fed. R. Crim. P. 33(b)(1). Defendant filed his notice of appeal on June 25, 2018, several weeks *before* he filed this motion for a new trial. Rosario II, [Dkt. 49 (Notice of Appeal)]. The appeal is currently pending and the Second Circuit has not remanded Defendant's case to this Court. Therefore, the motion for a new trial is procedurally improper and the Court could not grant it at this time.

Second, Defendant fails to cite the relevant standard under which a Rule 33 motion based on newly discovered evidence may be granted: "Relief under Rule 33 based on newly discovered evidence may be granted only upon a showing that '(1) the evidence [was] newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal.'" *United States v. Forbes*, 790 F.3d 403, 406–07 (2d Cir. 2015) (internal citation and quotation omitted).

Without referring to any of the above factors, Defendant argues that justice requires the Court to order a new trial for the following reasons: (1) the Government should be forced to decide whether it will retry him on the conspiracy charge; (2) there was not sufficient incriminating evidence on the telephone that Defendant wanted Ms. Lexie to destroy so he could not have intended the phone to be destroyed to obstruct justice; (3) alleged jury misconduct; and (4) an incomplete

5

transcript. None of these reasons justify a new trial under Rule 33. Defendant's motion is another attempt to postpone his sentencing until after the Government decides whether it will retry him on the conspiracy charge on which the jury did not reach a verdict.

The Court is not persuaded by Defendant's arguments. First, Defendant claims that it was not until the Government responded to his motion for judgment of acquittal and the Court denied his motion that he was on notice that the Court was inclined to permit the sentencing to proceed under the Government's overtly stated claim that an above guideline sentence would "obviate the need" to retry the Defendant for conspiracy to distribute at least 1 kilogram of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. *See* Rosario II, [Dkt. 41 (Gov. Opp'n to Def.'s Mots. For J. of Acquittal and Continuance of Sentencing) and Dkt. 42 (Ruling and Order on Mot. for J. of Acquittal)]. The Government's procedural argument is not evidence. Accordingly, Federal Rule of Criminal Procedure 33(b)(1) does not apply.

In addition, the Court expressly stated that it was not inclined to sentence Defendant based on the conduct underlying the charge on which the jury could not reach a verdict. *See* Rosario II, [Dkt. 42 (Ruling and Order on Mot. for J. of Acquittal)]. The Court explained that the sentence for obstruction should bear a relation to the penalty sought to be avoided. The Court further explained its role as a neutral arbiter to sentence a Defendant for the offense of conviction, not to be a vehicle for fulfillment of the Government's prosecutorial aims. The Court declined to participate in the strategic machinations of the parties.

Second, Defendant claims that the interests of justice require a new trial because there was evidence on both sides regarding Defendant's intent behind ordering Ms. Lexie to destroy her cell phone. That is exactly why the issue was presented to the jury, to resolve that question of material fact, which they did. The simple fact that Mr. Rosario is dissatisfied with their decision is not a basis for a new trial. *See United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) ("To grant the motion [for a new trial], [t]here must be a real concern than an innocent person may have been convicted.") (internal citation and quotation omitted).

Again, as set forth in the Court's Ruling and Order on Motion for Judgment of Acquittal at Dkt. 42 and reiterated above, there was substantial evidence that Defendant wanted the cell phone to be destroyed because it contained incriminating evidence. Defendant told Ms. Lexie that she must do what his mother asks her to do because the Government is trying to make him seem like "the biggest fucking drug dealer." Rosario, II [Dkt.41-1 (Gov. Exs. 200A-T–200F-T) at USAO-002958]. Defendant called his mother while she was at her house with Ms. Lexie and instructed his mother to "Break the window." *Id.* at Gov. Ex. 200D-T. Mr. Rosario later testified both he and Ms. Lexie understood "window" to mean "phone." Rosario I, [Dkt. 291 (Rosario Trial Tr. Day 9) at 234:6–10]. The jury also heard evidence that Mr. Rosario instructed Ms. Lexie to bring the item he wanted her to destroy to his mother's home and destroy it in his mother's presence. Ms. Lexie threw the item Mr. Rosario wanted her to destroy in the Long Island Sound. Rosario I, [Dkt. 290 (Rosario Trial Tr. Day 8) at 58:15–59:7]. A reasonable jury could have found that Mr. Rosario did not instruct Ms. Lexie to bring a window to his

7

mother's house and break it and that Ms. Lexie did not throw a window into the Sound; but rather the item they were discussing was a cell phone as the Government suggested. A reasonable jury also could have found that Defendant's requests for Ms. Lexie to break her cell phone were made to prevent its use in an official proceeding.

Third, Defendant claims that the Court failed to ensure that the Defendant received a fair trial after learning of discussions among two jurors out of the presence of the other jurors. First, the Court has already ruled on this claim and Defendant offers no legal basis for its reconsideration.

Federal Rule of Criminal Procedure 33(b)(1) does not afford Defendant the relief sought. Defendant relies on *United States v. Cox* in which the Second Circuited rejected defendants' juror misconduct claim where a juror had a conversation with a secretary working for the government. 324 F.3d 77, 87 (2d Cir. 2003). The Circuit found that the district court judge did not abuse his discretion by examining the two jurors involved in and providing reinforcing instruction to all jurors. *Id.* at 88. Like *Cox*, the jurors at issue here were not deliberating, discussing evidence, or applying the law to the facts. They were discussing their deliberation process.

The dynamic of deliberation is a private matter between the jurors and should not be disclosed. Defense counsel were made aware of the matter and how the Court intended to proceed. The Court delivered an Allen Charge and there were no indications that the jurors were unable to deliberate. Thus, there is no basis to

conclude that the impasse persisted other than the fact that the jury was unable to reach a verdict on certain charges, which was not prejudicial to the Defendant.

Defendant's suggestion that the split verdict represented a compromise is pure speculation. Defendant offers no facts suggesting the jurors were discussing the merits of the case nor is there any such indication. The only way he could make such a representation of fact is if defense counsel asked a juror to disclose the contents of confidential jury deliberations, which he does not admit to having done.

Furthermore, "intra-jury communications pose a less serious threat to a defendant's right to an impartial trial than do extra-jury influences, and therefore district courts are entitled to even greater deference in their responses to them than in responses to outside influences." *United States v. Sabhnani*, 529 F. Supp. 2d 384, 390 (E.D.N.Y. 2008) (internal citations and quotation marks omitted). Even in a more egregious case "when there are premature deliberations among jurors with no allegations of external influence on the jury, the proper process for jury decisionmaking has been violated, but there is no reason to doubt that the jury based its ultimate decision only on evidence formally presented at trial." *Id.* at 391.

Nor does *Foster v. Griffin*, cited by Defendant, persuade the Court. In that case, a member of the jury had a six-year personal relationship with the cousin of the victim and that juror agreed to locate the defendant for the victim's cousin so that he could kill the defendant. No. 11-CV-0041 MAT, 2012 WL 777463, at *3-4 (W.D.N.Y. Mar. 8, 2012). The jury had been infiltrated with a person who had knowledge, involvement, and a personal interest in the case which was not disclosed. Moreover, the juror had demonstrated a propensity to retaliate against

the Defendant. There was a serious risk, indeed a possibility, that the jury had been tainted by the biased juror's presence of the jury. Both the defense and the government in that case asked that the juror be excused and the court excused the juror. *Id.* at *4. On habeas review, the court found that the mistrial claim was not meritorious and defendant's counsel was not ineffective for failure to raise it on appeal. *Id.* at *9. That case bears no relation to the facts here since there is no indication of any juror bias against or affinity with the Defendant.

Fourth, Defendant argues that portions of a sidebar during trial which were not transcribed result in profound prejudice to him. Defendant claims that his counsel attempted to examine Ms. Lexie at trial regarding an alternative reason why Defendant would want his cell phone destroyed – because it contained evidence of a sexual relationship between Defendant and Ms. Lexie that Defendant wanted to hide from his wife. Defendant claims that his counsel's attempt to develop this testimony "was curtailed and cut-off during an indiscernible sidebar."

This is a patently false claim. While the transcript it incomplete, the content of the sidebar is clear. By way of background, the parties agreed that the Government would offer Ms. Lexie's testimony purely to identify her participation in the jailhouse recordings regarding destruction of evidence and to discredit Defendant's testimony that he wanted Ms. Lexie to destroy her cell phone because it contained evidence of his sexual relationship with Ms. Lexie. *See* Rosario I, [Dkt. 292 (Rosario Trial Day 9 – Charge Conference at 13:6–15:3)]. To accomplish this, the parties further agreed that the Government should be permitted to ask Ms. Lexie leading questions so as not to elicit testimony about Ms. Lexie's knowledge

of Defendant's drug trafficking. *Id.* at 13:10–14:16. The Government's direct examination of Ms. Lexie was consistent with this agreement, but on cross-examination Defendant's counsel asked a question which opened the door to drug trafficking testimony: "And is it your understanding or are you aware that Mr. Rosario might have had a concern about any sex videos getting out in public?" *See* Rosario I, [Dkt. 290 (Rosario Trial Day 8 at 62:10-12)]. After the Government objected, the Court called the parties for a sidebar. The Court has the transcript of the sidebar[1] and it is set forth in full below:

(Sidebar begins 12:18 p.m.)

THE COURT: Were you aware that -- there's an inference that -- there's no evidence that Mr. Rosario was (indiscernible) –

MR. MCCONNELL: I'll rephrase it.

THE COURT: (Indiscernible). I don't –

MR. VIZCARRONDO: Again, providing the Court with some context. There was -- again, Ms. Lexie was very reluctant to discuss the contents of the phone. At one point she did indicate that there were some intimate videos. But during her discussions with the Government she made it clear that at no time was her agreement with the defendant to destroy the phones having anything to do with a sex tape. She in fact told us what she was concerned about and what the contents of the recordings were. We did not elicit that testimony, so unless Mr. McConnell wants to confuse the jury, we'll bring out exactly what on that recording.

THE COURT: (Indiscernible) the question?

MR. MCCONNELL: That he wants to –

---

[1] Although the court reporter initially had difficulty transcribing this portion of the transcript, the issue was remedied and the transcript was entered on the docket on April 12, 2018. *See* Rosario I, [Dkt. 279 (Rosario Trial Day 8 – Side Bars Only) at 6:15-9:10]. To the extent Defendant claims that there are other indiscernible sidebars, transcripts of sidebars from April 5, 2018 (Day 8) are available at Dkt. 279 and transcripts of sidebars from April 6, 2018 (Day 9) are available at Dkt. 280.

11

THE COURT: (Indiscernible) the sex tapes with (indiscernible) was concerned that -- you didn't even ask her. You stated that he was and you and asked her if she was (indiscernible). You've opened the door.

MR. MCCONNELL: Well, opened the door right now that they –

THE COURT: Opened the door to having the Government refute the impression that you gave the jury. (Indiscernible).

MR. MCCONNELL: Okay. However, she just -- I mean, for the record, she's not answered that question, so I'll just get off –

MR. VIZCARRONDO: Well, if you want her to answer that question, I'm going to ask her what the recording was about.

THE COURT: You've made the statement, that's the problem. Were you aware of that he was concerned that those tapes get out? That is a statement. It is a statement containing a question (indiscernible) statement. It is a statement. It isn't a question. It's worse than a leading question.

MR. MCCONNELL: Well –

THE COURT: Because she can say no, and you still potentially imparted that information to the jury, thereby misleading them. That's why the door is open for the Government to clarify that it's not all what (indiscernible).

MR. MCCONNELL: Well, I don't know. You could say that it's not at all true that maybe the Government stated, but I agree.

THE COURT: But there was no evidence.

MR. VIZCARRONDO: I just want to –

MR. MCCONNELL: There is evidence. There is evidence that there were sex tapes.

THE COURT: But there's no evidence that he was concerned with them.

MR. MCCONNELL: That's true.

THE COURT: There's no evidence that there's concern about (indiscernible). There's no evidence that he's concerned about that.

MR. MCCONNELL: Well, Your Honor, they were asking her all kinds of questions about her -- his or her impression of what he was doing, and she was interpreting what he was -- in terms of the context of the telephone conversation.

12

She was interpreting what he -- what they were talking about and opining and filling in the -- and filling in the details.

THE COURT: Asking her what she understood their conversation to mean. It's (indiscernible).

MR. MCCONNELL: I agree.

THE COURT: You could have asked her -- you could have asked her: what is your understanding behind him (indiscernible) phone destroyed.

MR. MCCONNELL: Okay. (Sidebar ends 12:22 p.m.)

**Rosario I, [Dkt. 279 (Rosario Trial Day 8 – Side Bars Only) at 6:14–9:10]. As the record clearly reflects, the Court did not preclude Defendant from eliciting additional testimony from Ms. Lexie. However, the Court cautioned Defendant's counsel that the question he had asked opened the door to re-direct from the Government to rebut the misstatement of the evidence made by Defendant's counsel to the effect that Defendant wanted Ms. Lexie to destroy her cell phone because it contained sex tapes which would result in the introduction of evidence the Government agreed not to offer. *Id*. Rather than preclude Defendant's counsel from proceeding with his inquiry the Court offered an alternate question which would elicit the evidence Defendant's counsel sought to introduce without opening the door to the Government's introduction of evidence on the subject the Government agreed not offer. *Id*.**

**Regardless, any statements by Ms. Lexie are not new evidence. As Defendant explicitly states in his motion, Ms. Lexie was interviewed and, according to the FBI 302 that was produced to Defendant in advance of trial, Ms. Lexie initially told investigators that her cell phone contained secretly recorded videos of conversations and intimate moments between her and Defendant and Defendant**

wanted to destroy her cell phone so his wife would not find out. This is not evidence newly discovered after trial. Moreover, this evidence was elicited from Ms. Lexie at trial:

> MR. MCONNELL: All right. So now during the course of your relationship and when you would have sexual relations with him you guys sometimes recorded that stuff using these phones, right?
>
> MS. LEXIE: Yes.
>
> MR. MCONNELL: Yeah? More than one time, right?
>
> MS. LEXIE: Yes.

*See* Rosario I, [Dkt. 290 (Rosario Trial Day 8 at 62:3-9]. Defendant's counsel made the strategic decision to elicit testimony about the existence of the sex tapes, but not Defendant's reason for asking Ms. Lexie to destroy her cell phone because that would allow the Government to introduce harmful rebuttal evidence.

For the foregoing reasons, Defendant's motion for a new trial is DENIED.

## IV. Motion for Reconsideration

Defendant requests that the Court reconsider its earlier order denying his motion for a mistrial as related to jury misconduct. Defendant cites Federal Rule of Criminal Procedure 26.3 which states: "Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." Fed. R. Crim. P. 26.3. Defendant cites this rule in a conclusory fashion and does not describe it in his supporting memorandum of law. The Advisory Committee Notes to Rule 26.3 state that "the rule is directed at

providing both sides an opportunity to place on the record their views about the proposed mistrial order." The Defendant, having made his oral motion for a mistrial on April 24, 2018, clearly had his opportunity to place on the record his views that the Court should order a mistrial. Rosario II, [Dkt. 26 (Oral Mot. For Mistrial)]. The Court considered and denied his motion. Rosario II, [Dkt. 37 (Order Denying Oral Mot. For Mistrial)]. Moreover, Defendant does not state how his motion for reconsideration, which was denied on April 24, 2018, is timely. Pursuant to this Court's Local Rule 7(c)(1), motions for reconsideration "shall be filed and served within seven (7) days of the filing of the decision or order from which such relief is sought, and shall be accompanied by a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked." D. Conn. L. Civ. R. 7(c)(1); *see also* D. Conn. L. Cr. R. 1(c). Defendant cites no Second Circuit authority to justify his untimely filing or to show controlling decisions he believes the Court overlooked.

For the reasons set forth above, the Court the Defendant's motion to reconsider is DENIED.

## V. Conclusion

For the reasons set forth above, Defendant's motion is DENIED.

IT IS SO ORDERED

       /s/
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: November 14, 2018.